# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

MEL KENNETH CHAPMAN,            }
                                }
    Plaintiff,              }
                                }
v.                              }        CASE NO. CV 98-B-2542-S
                                }
THE BARBER COMPANIES, INC.,     }
                                }
    Defendant.              }

**ENTERED**

## MEMORANDUM OPINION

This case is before the court on defendant's Motion for Summary Judgment.  Plaintiff

Mel Kenneth Chapman ("plaintiff" or "Chapman") brought this action against The Barber

Companies, Inc. ("defendant" or "Barber") alleging violations of three federal statutes, the Age

Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), the Americans with

Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. ("ADA"), and Title VII of the Civil Rights

Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) ("Title VII"), as well as several state law

causes of actions, including invasion of privacy, intentional infliction of emotional distress, and

defamation.[1]  Upon consideration of the record, the submissions of the parties, the argument of

counsel, and the relevant law, the court is of the opinion that defendant's motion is due to be

granted.

## I. FACTS

In 1996, plaintiff, age 53, was employed by defendant on a temporary basis as Plant

Manager.  (Pl.'s Dep. at 63-63, attached as Ex. 1 to Def.'s Evid. Sub.; Niven Dep. ex. 5 ("Niven

---

[1]  By Order dated December 15, 1998, the court dismissed Count III of the Complaint, which
alleged violations of the Alabama Age Discrimination in Employment Act.

Statement"), attached as Ex. 2 to Def.'s Evid. Sub.)  Plaintiff had been employed with defendant

for over thirty years. (Niven Dep., ex. 1.)  In 1996, defendant began making management

changes in response to an evaluation of its operations by an independent consulting group from

Coopers & Lybrand. (Niven Stmt. at 1.)  The recommendation of the Coopers & Lybrand report

was to eliminate layers of management and develop teamwork. (Niven Dep. at 84-86, exs. 2, 3.)

As part of the evaluation process, representatives of Coopers & Lybrand interviewed

plaintiff. (Pl.'s Dep. at 196-98.)  Coopers & Lybrand specifically recommended that defendant

replace plaintiff. (Niven Stmt. at 1.)  From September 1996 through January 1997, seven

managers, ages 50, 48, 38, 38, 33, 27 and 27, were terminated, and one other manager, age 46,

was reassigned. (Bryant Aff. at ex. 1, attached as Ex. 6 to Def.'s Evid. Sub.)  Because plaintiff

had a long tenure with defendant, defendant did not terminate him during the restructuring.

(Niven Stmt. at 1.)  Instead, Niven reassigned plaintiff to the position of Sanitation Manager on

January 13, 1997. (Pl.'s Dep. at ex. 1; Niven Stmt. at 1-2.)  Plaintiff's rate of pay remained the

same, and he continued to have supervisory responsibility over an entire shift (the third shift,

which operated at night). (Pl.'s Dep. at 78-79; Niven Dep. at113-14.)

Steven Niven ("Niven"), the General Manager, believed that plaintiff's poor

communication and interpersonal skills made plaintiff an ineffective Plant Manager. (Niven

Dep. at 37-38; Niven Stmt. at 1-2).  Niven had received reports that plaintiff argued and had

confrontations with his peers and with hourly employees. (Niven Stmt. at 1.)  Niven decided that

the Sanitation Manager position was appropriate for plaintiff because plaintiff would be in

charge of fewer employees as Sanitation Manager and therefore less likely to have problems

interacting with employees. (Niven Dep. at 37-38, 45-46; Niven Stmt. at 1.)  Additionally,

2

according to Niven, plaintiff told him that he was struggling with the acting Plant Manager position, he was overwhelmed, and he wanted to step back into a production supervisor position. (Niven Stmt. at 1; Niven Dep. at 25-27, 32-34.)

In a meeting with Niven and Mike Dodd (Niven's manager), plaintiff told Niven and Dodd that he was "too old and not physically fit to do the [Sanitation Manager] job." (Pl.'s Dep. at 55, 79-80, 84-85.) Niven responded that the Sanitation Manager job was all that was available if plaintiff wished to remain employed with defendant. (Pl.'s Dep. at 55-56; Niven Dep. at 59-60.)

Plaintiff claims that Niven told him that he would find a way to fire the plaintiff. (Pl.'s Dep. at 131-32.) Plaintiff admits that Niven never mentioned plaintiff's age. (Pl.'s Dep. at 74, 120.) During an argument with plaintiff, however, Frankie Ramos ("Ramos"), a co-employee, made a comment that plaintiff was an old man and that Ramos tried to respect plaintiff's seniority and age. (*Id.* at 120-27.)

Defendant gave plaintiff a week off to decide whether he wanted the Sanitation Manager position. (Pl.'s Dep. at 74-75.) Plaintiff accepted the position a few days after the meeting. (*Id.* at 75.) After plaintiff's reassignment, no one person replaced plaintiff as Plant Manager; the duties were performed by two or three people. (Pl.'s Dep. at 186-88; Niven Dep. at 189-90.)

Prior to his reassignment, plaintiff experienced problems with his back and neck. (Pl.'s Dep. at 93-97.) At the time plaintiff was reassigned, Niven was unaware of any documentation indicating that plaintiff was unable to perform the functions of the Sanitation Manager position. (Niven Dep. at 54-55.) Plaintiff did not have any sleep or nerve problems until after he accepted the Sanitation Manager position. (Pl.'s Dep. at 80-83, 99.) Plaintiff testified that he has a

3

sleeping disorder in that he had trouble sleeping during the day when his hours were switched over to nights. (Pl.'s Dep. at 99.)

After taking the Sanitation Manager position, plaintiff mentioned to Tom Lunsford, the Quality Assurance Manager, that he had problems with his hands and legs and had fibromyalgia. (Pl.'s Dep. at 102; Lunsford Dep. at 99-100, attached as Ex. 4 to Def.'s Evid. Sub.) Plaintiff did not show Lunsford any records or documents verifying these ailments, and Lunsford does not recall plaintiff requesting any assistance. (Lunsford Dep. at 99-100.) According to plaintiff, Lunsford told him that if things got too bad, he should go home early and rest, which plaintiff did on occasion. (Pl.'s Dep. at 102.)

In June 1997, Niven offered plaintiff an opportunity to move to the day shift and work in the cold storage department. (Pl.'s Dep. at 128-29, 131-33.) Plaintiff perceived this offer as a threat to his job. (*Id.*) Consequently, on June 6, 1997, plaintiff went by the Equal Employment Opportunity Commission ("EEOC") and dropped off an intake questionnaire, containing a narrative dictated by plaintiff and written by his wife. (Pl.'s Dep. at 289-91; Pl.'s Intake Questionnaire, attached as Ex. 33 to Pl.'s Evid. Sub.) In the questionnaire, plaintiff complained about his reassignment to the third shift Sanitation Manager position. (*Id.*) Specifically, plaintiff's complaints included: (1) he was too old to handle the job; (2) the two employees who replaced him in his former position were younger; (3) since his demotion, he had been subjected to harassment based on his age; and (4) due to his new position, he suffered from stress, a sleeping disorder, and arthritis. (Pl.'s Intake Questionnaire, attached as Ex. 33 to Pl.'s Evid. Sub.) Plaintiff did not file a formal charge with the EEOC in June 1997, nor did he speak with anyone at the EEOC when he dropped off the questionnaire. (Pl.'s Dep. at 291.)

4

On November 18, 1997, plaintiff filed his first formal Charge of Discrimination against defendant with the EEOC. (Pl.'s Dep. at 293-95; Pl.'s First EEOC Charge, attached as Ex. 16 to Pl.'s Evid. Sub.) The subject of the Charge was the January 1997 reassignment to Sanitation Manager. (Pl.'s First EEOC Charge.) In the Charge, plaintiff alleged that his reassignment constituted discrimination based on age, in violation of the ADEA, and based on disability, in violation of the ADA. (*Id.*) The Charge also contained the following parenthetical statement: "(Original Filed June 6, 1997)." (*Id.*)

On May 20, 1998, defendant was served with the complaint in a lawsuit filed by another of defendant's employees, Dennis Nixon ("Nixon"). (Niven Dep. at 124, ex. 7.) Nixon's lawsuit contained allegations of racial discrimination and disparate treatment based in large part on the actions of plaintiff. (Niven Dep. at 124, ex. 7.)

After receiving the complaint, defendant hired an investigation firm headed by Lloyd G. Ketchum ("Ketchum") to observe the third shift and the ending of the second shift. (Niven Dep. at 125-26, 131.) Defendant instructed the investigation firm to observe operations when Niven was not present to determine if materials and manpower were used properly, and to see if employees complied with federal and state laws as well as company polices. (Niven Dep. at 126, 137-39.) In its instructions to Ketchum, the defendant did not refer to any particular employees. (Ketchum Aff. at 2, attached Ex. 5 to Def.'s Evid. Sub.)

Defendant had used private investigators in the past. (Niven Dep. at 126-29; McFall Dep. at 77-78, attached as Ex. 3 to Def.'s Evid. Sub.) In November and December 1997, Niven had previously hired an investigator to observe events on the first and second shifts. (Niven Dep. at

5

126-27.)  This prior investigation revealed only petty theft by a janitor, who was fired.  (*Id.* at 128-30.)

As part of the 1998 investigation, Ketchum and Niven hired undercover investigator Adrian Copeland ("Copeland") as an hourly employee on the third shift.  (Niven Dep. at 136-39.) On July 13, 1998, after a seven-week investigation by Copeland, Ketchum issued a report to defendant.  (Niven Dep., ex. 8.)  The report contained a finding that "the third shift supervisor [plaintiff] favors white employees over minority workers . . . ."  (Niven Dep. at ex. 8, no. D00037.)[2]  The report also contained findings that plaintiff attempted to "drive off" employees, did not provide proper training to employees, had been absent during parts of the shift, disparaged plant managers and corporate officers, wasted manpower, and took extended breaks with four other employees.  (*Id.* at ex. 8, nos. D00037-D00038.)

Defendant met with plaintiff regarding these findings on July 18, and July 20, 1998. (Niven Dep. at 152-54, ex. 11; Pl.'s Dep. at 160, 166-67, 266-70, ex. 17.)  Present at the meetings were plaintiff, Niven, Human Resources Manager Carlyn McFall ("McFall"), and possibly Operations Manager Winford Collier ("Collier").  (Pl.'s Dep. at 172-73; Niven Dep. at 153-55; McFall Dep. at 6, 50-52, attached as Ex. 3 to Def.'s Evid. Sub.)  Following the second meeting on July 20, 1998, defendant terminated plaintiff's employment for "performance and behavior inconsistent with company policies."  (Niven Dep. at 178.)  President Vern Hydorn, age 60, decided to terminate plaintiff.  (*Id.* at 146; Bryant Aff., ex. 2, attached as Ex. 6 to Def.'s Evid. Sub.)

---

[2]  The report does not contain numbered pages, thus pages are referred to by the document label number affixed to each document by one of the parties' counsel.

6

Defendant did not terminate the other four employees who took extended breaks because they violated company policy with the permission of plaintiff. (Lunsford at 103-04; Turnbough, McCune, Muscato and Wright Affs., attached as Exs. 7-10 to Def.'s Evid. Sub.)

On July 31, 1998, plaintiff filed a second EEOC Charge, alleging discrimination and retaliation in that he was harassed at work and discharged. (Pl.'s Dep. at 297; Pl.'s Second EEOC Charge, attached as Ex. 16 to Pl.'s Evid. Sub.) Plaintiff filed his complaint in this action on October 6, 1998.

## II. DISCUSSION

### A.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if the pleadings and evidence indicate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of

inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

**B.     Demotion Claim**

        *1.     Exhaustion of Remedies*

                <u>**a.**</u>     <u>**180-day Filing Deadline**</u>

Defendant contends that the June 6, 1997, intake questionnaire that plaintiff filed with the EEOC did not constitute a formal Charge of Discrimination. As a prerequisite to a civil action for age or disability discrimination, the ADEA and the ADA require that an individual file a Charge alleging unlawful discrimination with the EEOC within 180 days of the alleged discriminatory act. 29 U.S.C. § 626(d)(1) (ADEA); 42 U.S.C. § 12117(a) (ADA) (adopting Title VII powers, remedies, and procedures for ADA claims). Plaintiff's reassignment/alleged demotion to the Sanitation Manager position took place in January 1997. Thus, defendant contends that when plaintiff filed a formal Charge in November 1997, the 180-day deadline to file a Charge had expired and he had no cause of action based on his transfer to the Sanitation Manager position.

The EEOC's interpretation of statutes which it is charged with enforcing is entitled to great deference. *Clark v. Coats & Clark, Inc.*, 865 F. 2d 1237, 1240 (11th Cir. 1989). The construction of a statute by those charged with its enforcement should be followed unless there are compelling indications that it is wrong. *Id.*

In this case, the pertinent EEOC regulations read:

Form of charge.

A charge shall be in writing and shall name the prospective respondent and shall generally allege the discriminatory act(s). Charges received in person or by telephone shall be reduced to writing.

29 C.F.R. § 1626.6

Contents of charge; amendment of charge.

(a) In addition to the requirements of § 1626.6, each charge should contain the following:

(1) The full name, address and telephone number of the person making the charge;

(2) The full name and address of the person against whom the charge is made;

(3) A clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices;

(4) If known, the approximate number of employees of the prospective defendant employer or members of the prospective defendant labor organization.

(5) A statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State agency charged with the enforcement of fair employment practice laws and, if so, the date of such commencement and the name of the agency.

(b) *Notwithstanding the provisions of paragraph (a) of this section, a charge is sufficient when the Commission receives from the person making the charge either a written statement or information reduced to writing by the Commission that conforms to the requirements of § 1626.6.*

(c) A charge may be amended to clarify or amplify allegations made therein. Such amendments and amendments alleging

9

> additional acts which constitute unlawful employment practices
> related to or growing out of the subject matter of the original
> charge will relate back to the date the charge was first received. A
> charge that has been so amended shall not again be referred to the
> appropriate State agency.

29 C.F.R. § 1626.8 (emphasis added).

The Eleventh Circuit has held that while section 1626.8(a) identifies information beyond

that set out in section 1626.6, the additional information is not required to be included in a

document in order for that document to constitute a charge within the meaning of 29 U.S.C. §

626(d)(1); section 1626.8(a) merely states that the additional information "should" be stated in

the charge. *Clark*, 865 F. 2d at 1240-41 ("The plain language of section 1626.8(b) unmistakably

establishes that a charge is sufficient without the additional information.")

As the Eleventh Circuit has stated:

> The basic purpose of the filing requirement of section 626(d)(1) "is
> to provide the [then] Department [of Labor, now the EEOC] with
> sufficient information so that it may notify prospective defendants
> and to provide the * * * [EEOC] with an opportunity to eliminate
> the alleged unlawful practices through informal methods of
> conciliation.". H.R. Conf. Rep. No. 950, 95th Cong., 2d Sess.,
> *reprinted in* [1978] U.S. Code Cong. & Admin. News 504, 528,
> 534. Specifically, Congress intended "that the 'charge'
> requirement will be satisfied by the filing of a written statement
> which identifies the potential defendant and generally describes the
> action believed to be discriminatory." *Id.*

*Id.* at 1241 (alterations in original).

As in *Clark*, the informal intake questionnaire in this case fulfilled all of the objectives

desired by Congress in enacting section 626(d)(1). The questionnaire was in writing and

described the action which Chapman believed to be discriminatory. (Pl.'s Charge Questionnaire,

attached as Ex. 33 to Pl.'s Evid. Sub.) Defendant claims that the questionnaire "fail[s] to even

identify the parties involved in the alleged discrimination," (Def.'s Brief at 14), but the questionnaire specifically identifies defendant by name and address. (*Id.*) The Commission, if it so desired, could have promptly notified defendant of plaintiff's allegations.

Consequently, the court finds that the June 6, 1997, intake questionnaire is sufficient to constitute a Charge of Discrimination under the standard set forth by the Eleventh Circuit in *Clark.* Since it constitutes such a Charge, plaintiff filed within 180 days of the alleged discrimination and his claim is not barred by failure to file an EEOC Charge within 180 days of the alleged discriminatory act.

### b.   Scope of Original Charge

Defendant also moves for summary judgment on the grounds that even if the June 6, 1997, questionnaire constitutes a Charge, it did not contain allegations of disability discrimination, thus any such claims are barred by plaintiff's failure to exhaust administrative remedies. The ADA specifically adopts Title VII procedural requirements for ADA claims. Pursuant to these procedures, when a plaintiff fails to exhaust administrative remedies the federal courts lack subject matter jurisdiction over the claims and the claims must be dismissed. *Khader v. Aspin*, 1 F.3d 968, 971 (10th Cir. 1993); *Grier v. Secretary of Army*, 799 F.2d 721, 724 (11th Cir. 1986).

In discrimination claims, the starting point for determining the permissible scope of a judicial complaint is the administrative charge and investigation. The judicial complaint is limited to the scope of the administrative investigation which could reasonably be expected to grow out of the charge of discrimination. *Increase Minority Participation v. Firestone*, 893 F.2d 1189, 1196 (11th Cir. 1990); *Griffin v. Carlin*, 755 F.2d 1516, 1522 (11th Cir. 1985). If the

11

agency never has the opportunity to reach the merits of the complaint, the federal courts should

not examine the merits either. *Johnson v. Bergland*, 614 F. 2d 415, 418 (5th Cir. 1980).

"Exhaustion of remedies" includes an employee's "good faith effort to cooperate with the agency

and the EEOC and to provide all relevant available information." *Wade v. Secretary of the Army*,

796 F.2d 1369, 1377 (11th Cir. 1986).

> As noted, the relevant EEOC regulation provides that:

> > A charge may be amended to clarify or amplify allegations made
> > therein. Such amendments and amendments alleging additional
> > acts which constitute unlawful employment practices related to or
> > growing out of the subject matter of the original charge will relate
> > back to the date the charge was first received. A charge that has
> > been so amended shall not again be referred to the appropriate
> > State agency.

29 C.F.R. § 1626.8(c).

In this case, the June 6, 1997, questionnaire contained no mention of discrimination due

to disability. In the questionnaire, plaintiff alleged that: (1) he was too old to handle the

Sanitation Manager position; (2) the two employees who replaced him in his former position

were younger; (3) since his demotion, he had been subjected to harassment based on his age; and

(4) due to his new position, he suffered from stress, a sleeping disorder, and arthritis. (Pl.'s

Intake Questionnaire, attached as Ex. 33 to Pl.'s Evid. Sub.) None of these allegations could be

construed as a complaint of discrimination based on disability. Had the EEOC notified

defendant of the Charge, defendant would not have been put on notice of a disability

discrimination claim.

As discussed, the court has determined that the questionnaire is a Charge for purposes of

the 180-day filing deadline. Plaintiff is thus entitled to amend the Charge to include "additional

acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge." 29 C.F.R. § 1626.8(c).  In the November 18, 1997, Charge, however, plaintiff included no such "additional acts" that could be construed as allegations of disability discrimination.  (Pl.'s First EEOC Charge, attached as Ex. 16 to Pl.'s Evid. Sub.) Plaintiff merely stated that he had been demoted from the position of Plant Manager in violation of the ADEA and the ADA.  (*Id.*)  Similarly, plaintiff did not allege any "additional acts" that could be construed as allegations of disability discrimination in his July 31, 1998, EEOC Charge. (Pl.'s Second EEOC Charge, attached as Ex. 16 to Pl.'s Evid. Sub.)  Consequently, the court is of the opinion that neither the November 18, 1997, Charge nor the July 31, 1998, Charge constitute amendments that "relate back to the date the charge was first received." 29 C.F.R. § 1626.8(c). Therefore, plaintiff failed to exhaust his remedies as to any disability claims relating to his alleged demotion to Sanitation Manager, and summary judgment is due to be granted on the claim that defendant discriminated against plaintiff on the basis of disability when it allegedly demoted him.

### 2.   *ADA Claim*

Even if the court were to accept that plaintiff timely filed a charge alleging discrimination on the basis of disability, defendant is entitled to judgment as a matter of law on this claim for other reasons.  Defendant contends that plaintiff's claim that his reassignment/alleged demotion constituted discrimination as to disability must be dismissed because he was not a "qualified individual with a disability."  Plaintiff, in response, argues that he need not prove he was actually disabled; he need only show that defendant regarded him as disabled.

13

The ADA prohibits "discriminat[ion] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  In order to establish a prima facie case under the ADA, "a plaintiff must demonstrate that (1) he has a disability; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination as the result of his disability." *Gordon v. E.L. Hamm & Assocs., Inc.*, 100 F.3d 907, 910 (11th Cir. 1996).  If a plaintiff fails to do so, the employer is entitled to a judgment as a matter of law.  *Id.* at 915.

Under the ADA, "disability" is defined as: (1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment.  42 U.S.C. §§ 12102(2)(A)-(C).  Thus, individuals who are "regarded as" having a disability are disabled within the meaning of the ADA.  *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, ___, 119 S. Ct. 2139, 2149 (1999) (citing 42 U.S.C. § 12102(2)(C)).

There are two ways in which an individual may invoke this statutory definition of "regarded as" disabled: (1) an employer mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) an employer mistakenly believes that an actual nonlimiting impairment substantially limits one or more major life activities.  *Id.* at 2149-50.  "In both cases, it is necessary that a covered entity entertain misperceptions about the individual – it must believe that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting."  *Id.* at 2150.

14

"[T]he term 'substantially limits' means '[u]nable to perform a major life activity that the average person in the general population can perform' or '[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.'" *Hilburn v. Murata Electronics North America, Inc.*, 181 F. 3d 1220, 1226 (11th Cir. 1999) (quoting 29 C.F.R. §§ 1630.2(j)(1)(i), (ii) (1997)). "Major life activities are defined in the [EEOC] regulations as 'functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. *Id.* at 1226-27 (quoting 29 C.F.R. § 1630.2(i) (1997)).

In addressing the major life activity of working, "the [EEOC] defines 'substantially limits' as: 'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.'" *Murphy v. United Parcel Service, Inc.*, 527 U.S. 516, ___, 119 S. Ct. 2133, 2138 (1999) (quoting 29 C.F.R. § 1630.2(j)(3)(i) (1998)). "Thus, to be regarded as substantially limited in the major life activity of working, one must be regarded as precluded from more than a particular job." *Id.*

Consequently, when a plaintiff claims that he is "regarded as" disabled as to the major life activity of working, the statutory phrase "substantially limits" requires the plaintiff to allege that he is regarded as being significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes. *Sutton*, 527 U.S. at ___, 119 S. Ct. at 2151; *see also Gordon*, 100 F.3d at 913 ("As with real impairments, courts have held that a perceived

15

impairment must be substantially limiting and significant.  In this context, then, a significant impairment is one that is viewed by the employer as generally foreclosing the type of employment involved, not just a narrow range of job tasks.").

In this case, plaintiff contends that he is disabled in that he is "regarded as" being unable to work due to degenerative back and neck problems and arthritis.  (Pl.'s Brief at 11.)  Plaintiff offers two pieces of evidence that defendant regarded him as disabled.  First, plaintiff argues that defendant knew of these conditions but nonetheless "placed him into a job, which, by its own description, would exacerbate his arthritic conditions."  (Pl.'s Brief at 12.)  Second, plaintiff cites deposition testimony for the proposition that plaintiff's supervisor "granted an accommodation request of [plaintiff] to adjust his working hours to better enable [plaintiff] to perform his job with his disability."  (Id.)[3]

Plaintiff's argument fails for two reasons.  First, plaintiff failed to allege in his complaint or in his deposition that he was regarded as disabled.  Second, even if the court were to construe the complaint broadly to include an allegation of perceived disability, the court is of the opinion that viewed singly or together, plaintiff's allegations fail to constitute evidence that defendant perceived him as being "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes."  Murphy, 527 U.S. at ___, 119 S.Ct. at 2138.  In other words, the court is of the opinion that plaintiff has not produced evidence on which a reasonable

---

[3]  The cited deposition testimony states that after his reassignment, plaintiff complained to his supervisor about problems with his hands and legs and his supervisor advised him to "stop for a minute and rest."  (Lunsford Dep. at 33.)  The court notes that this evidence could not support an argument of discrimination as to the reassignment because the exchange took place after plaintiff was reassigned.  Thus, it is not probative of plaintiff's perceived disability at the time of the reassignment.

jury could conclude that defendant "regarded" plaintiff as having an impairment that substantially limited his major life activities. Thus, the court is of the opinion that defendant's motion for summary judgment on the ADA reassignment/demotion claim is due to be granted.

### 3.   *ADEA Claim*

As noted, plaintiff claims defendant also discriminated against him by demoting him because of his age. Defendant moves for summary judgment for two reasons. First, defendant contends that plaintiff cannot prove a prima facie case of age discrimination because he was not qualified to be plant manager. Second, defendant articulates a legitimate reason for the move – the consultant's recommendation – and argues that plaintiff cannot prove that the articulated reason is pretext for discrimination based on age. In response, plaintiff contends that he is qualified as plant manager and that defendant's proffered reason is pretext for discrimination. The court will address these arguments in turn.

17

### a.   Prima Facie Case

In evaluating age discrimination claims based on circumstantial evidence, the Eleventh Circuit requires a plaintiff to initially satisfy a four-part prima facie requirement: (1) that he was a member of the protected group of persons between the ages of forty and seventy; (2) that he was subject to adverse employment action; (3) that a substantially younger person filled the position that he sought or from which he was discharged; and (4) that he was qualified to do the job for which he was rejected. *See Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998) (citations omitted). At this stage of the analysis, plaintiff's burden is de minimis. *Jameson v. Arrow Co.*, 75 F. 3d 1528, 1533 n. 2 (11th Cir. 1996).

Defendant claims that plaintiff was not qualified because (1) he was never officially the plant manager, but rather placed in the position in an "acting" capacity; (2) plaintiff had problems interacting with other employees; (3) plaintiff was not "demoted" because he remained responsible for an entire shift and received no cut in pay;[4] and (4) plaintiff told Niven he was struggling as plant manager and would take a "demotion." (Def.'s Brief at 17.)

As noted, at this stage of the burden-shifting analysis, plaintiff's burden is de minimis. Consequently, the court is of the opinion that plaintiff's tenure as acting plant manager is sufficient evidence from which a reasonable jury could conclude that he was qualified for the position.

---

[4] This argument would actually pertain to the second element of the prima facie case, that plaintiff suffered an adverse employment action.

18

### b.   Legitimate, Nondiscriminatory Reason

Once the plaintiff establishes a prima facie case, the burden of production then shifts to the employer, who must articulate at least one legitimate, nondiscriminatory reason for demoting the plaintiff. *Watkins v. Sverdrup Technology, Inc.*, 153 F. 3d 1308, 1314 (11th Cir. 1998).  The employer's burden is production, not persuasion; the ultimate burden of persuasion remains at all times with the plaintiff.  *Id.*  (quotations and citations omitted).

Defendant claims that it moved plaintiff for a legitimate, nondiscriminatory reason: an independent consultant, Coopers & Lybrand, recommended that plaintiff be removed from the position.  (Niven Dep., ex. 5, attached as Ex. 1 to Def.'s Evid. Sub.)  Defendant decided not to terminate plaintiff because of his long tenure with defendant and instead moved him to the Sanitation Manager position  (*Id.*)  The court finds that defendant has met its burden of articulating at least one legitimate, nondiscriminatory reason for demoting the plaintiff.

### c.   Pretext

Once the employer produces legitimate, nondiscriminatory reasons, the "plaintiff's ensuing 'burden of proving [that the employer's proffered explanation is pretextual] merges with the plaintiff's ultimate burden of proving that age was a determining factor in his discharge, and it can be met by showing that a discriminating reason more likely than not motivated the employer's decision, or by discrediting the employer's proffered explanation.'" *Watkins*, 153 F. 3d at 1314 (quoting *Clark v. Coats & Clark, Inc.*, 990 F. 2d 1217, 1228 11th Cir. 1993)) (alterations in original).  "Under the latter approach, plaintiff must demonstrate 'such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nondiscriminatory reasons for its action that a reasonable factfinder could find [all of

those reasons] unworthy of credence.'" *Id.* (quoting *Combs v. Plantations Patterns*, 106 F. 3d 1519, 1538 (11th Cir. 1997)) (alterations in original).

As evidence of pretext, plaintiff presents evidence that, as the result of an annual review, plaintiff received a raise only ten days prior to the demotion. (Pl.'s Brief at 18; Payroll Notice dated January 1, 1997, attached as Ex. 35 to Pl.'s Evid. Sub.) Plaintiff contends that such a raise is sufficient evidence to discredit any claim that his job performance was unsatisfactory. (*Id.*)

This evidence might suffice had the raise been recommended by the independent consultant, or if defendant had been the sole decision-maker on plaintiff's reassignment. It is undisputed, however, that defendant, when it reassigned plaintiff, was acting on the recommendation of the independent consultant. Consequently, the court is of the opinion that this raise, given as the result of an annual review, is not sufficient evidence from which a reasonable fact finder could conclude that defendant's legitimate, nondiscriminatory reason was pretext for unlawful discrimination based on age.

## C.    Termination Claim

### 1.    *ADA Claim*

As to plaintiff's ADA termination claim, defendant and plaintiff repeat the arguments set forth regarding the plaintiff's ADA demotion claim. Based on the reasoning set forth above, the court is of the opinion that plaintiff has not produced evidence on which a reasonable jury could conclude that defendant "regarded" plaintiff as having an impairment that substantially limited

his major life activities. Thus, the court is of the opinion that defendant's motion for summary judgment on the ADA termination claim is due to be granted.[5]

### 2. *ADEA Claim*

#### a. Prima Facie Case

In a case such as this, where plaintiff's Sanitation Manager position was not filled after his termination, it is appropriate to apply an altered version of the four elements of the prima facie case. Under the "work rule" model employed in generic disparate treatment cases, a plaintiff establishes a prima facie case by demonstrating that (1) he belongs to the protected class; (2) he was subjected to an adverse job action; (3) his employer treated similarly situated employees outside the protected class more favorably; and (4) he was qualified to do the job. *Holifield v. Reno*, 115 F. 3d 1555, 1562 (11th Cir. 1997).

Defendant moves for summary judgment on the grounds that plaintiff cannot point to any similarly situated employees who were treated more favorably. (Def.'s Brief at 20-22). In response, plaintiff names three employees, Tracy Canipe ("Canipe"), Carlyn McFall ("McFall"),[6] and Niven, who were also named in the race discrimination lawsuit filed by employee John Nixon. (Pl.'s Brief at 14). Plaintiff alleges that defendant did not investigate and subsequently terminate these three employees in the same manner as it did plaintiff.

Although McFall, Niven, and Canipe are mentioned in the Nixon Complaint, none of the allegations against them (particularly the allegations against Niven and McFall) rise to the level

---

[5] Plaintiff abandoned this claim at oral argument.

[6] Called "McFadden" in the Nixon Complaint. (Nixon Complaint ¶ 24, attached as Ex. 4 to Pl.'s Evid. Sub.)

of the explicit racial harassment Nixon alleged against plaintiff.  (Nixon Compl., attached as Ex. 4 to Pl.'s Evid. Sub.)  Further, McFall is within the protected class.  (McFall Dep. at 40, attached as Ex. 3 to Def.'s Evid. Sub.)  As noted, however, the burden on plaintiff at this stage of the burden-shifting formula is de minimis, thus the court is of the opinion that Canipe may be considered a similarly situated employee for purposes of establishing a prima facie case.[7]

### b.    Legitimate, Nondiscriminatory Reasons

As legitimate, nondiscriminatory reasons for plaintiff's termination, defendant relies on the independent investigation conducted by Ketchum and Copeland.  The investigation found that "the [plaintiff] favors white employees over minority workers . . . ."  (Niven Dep. at ex. 8, no. D00037.)  The investigation also found that plaintiff attempted to "drive off" employees, did not provide proper training to employees, had been absent during parts of the shift, disparaged plant managers and corporate officers, wasted manpower, and took extended breaks with four other employees.  (*Id.* at ex. 8, nos. D00037-D00038.)  The court concludes that through these findings, defendant has met its burden to articulate legitimate, nondiscriminatory reasons for plaintiff's termination.

### c.    Pretext

As evidence of pretext, plaintiff contends that (1) Canipe was not investigated or targeted in the same manner as Chapman; (2) four other employees violated company policy with Chapman and were not terminated; and (3) defendant denied the allegations against Chapman in

---

[7] The court also notes that the subsequent investigation found four other employees who violated the same company policies as plaintiff but were not terminated.  (Niven Dep. at ex. 8, nos. D00037-D00038.)

its pleadings in the Nixon lawsuit. (Pl.'s Brief at 14-19.)  Plaintiff contends that this evidence is

sufficient evidence on which a reasonable jury could disbelieve defendant's proffered reasons for

the termination.  For several reasons, the court disagrees.

First, it is undisputed that Canipe was previously investigated in 1997, and the

investigation uncovered no improprieties by any supervisors on the first and second shifts,

including Canipe. (Niven Dep. at 126-29.)  Second, even if the investigation unfairly focused on

Chapman (and there is little evidence that it did), there is no evidence that it did so at defendant's

request.  Further, there is no evidence that defendant relied on Ketchum's investigative results

unreasonably or in bad faith.  *See Jones v. Bessemer Carraway Medical Center*, 151 F.3d 1321,

1324 n.16 (11th Cir. 1998) ("federal courts do not sit to review the accuracy of the employer's

fact findings or of the employer's decision to terminate a plaintiff's employment") *vacating in

part* 137 F. 3d 1306; *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th

Cir. 1984) ("The employer may fire an employee for a good reason, a bad reason, a reason based

on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory

reason.").

Third, it is undisputed that the other four employees named in Ketchum's report were

breaking company policy with the express permission of their supervisor, Chapman.  (Lunsford

at 103-04; Turnbough, McCune, Muscato and Wright Affs., attached as Exs. 7-10 to Def.'s Evid.

Sub.)  Consequently, defendant disciplined them differently.  (*Id.*)  Fourth, even if the court were

to consider stock denials issued in the Nixon lawsuit as evidence in this case, the denials were

issued prior to the issuance of a final report on Ketchum and Copeland's investigation of

23

Chapman. (*Compare* Def.'s Answer, attached as Ex. 36 to Pl.'s Evid. Sub. (filed July 1, 1998) *with* Niven Dep. at ex. 8, pp. D00036-00039 (Ketchum's Final Report dated July 13, 1998).)

Consequently, the court is of the opinion that plaintiff has not set forth sufficient evidence from which a reasonable fact finder could conclude that defendant's legitimate, nondiscriminatory reasons were pretext for unlawful discrimination based on age. Thus, plaintiff's ADEA termination claim is due to be dismissed as a matter of law.

## D.     Hostile Work Environment

Defendant moves for summary judgment on plaintiff's age-related hostile environment claim on two grounds. First, defendant contends that such a claim is not cognizable. Second, defendant argues that even if the claim were viable, the conduct alleged was not severe or pervasive enough to alter the terms and conditions of plaintiff's employment. In response, the plaintiff offers neither evidence nor argument. (*See* Pl.'s Brief.)

The court agrees with defendant. Even if the court were to recognize such a claim, plaintiff has not alleged age-related harassment on the part of defendant or its employees "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986). Indeed, plaintiff alleges only one such incident, an age-related remark by a co-employee. (Pl.'s Dep. at 120-24.) Therefore, the court is of the opinion that plaintiff has not set forth sufficient evidence on which a reasonable jury could find that age-related harassment altered the terms and conditions of plaintiff's employment.[8]

_____

[8] Plaintiff abandoned this claim at oral argument.

24

### E.    Retaliation

#### 1.    *Title VII*

Defendant moves for summary judgment on the grounds that plaintiff pled the wrong

statute: Title VII of the Civil Rights Act of 1964, as amended, as opposed to the anti-retaliation

provisions of the ADA or the ADEA. (Def.'s Brief at 25-26; Pl.'s Compl. ¶ 21.)  Defendant

contends that this error precludes plaintiff from either stating a claim as a matter of law or from

meeting the elements of a prima facie case. (Def.'s Brief at 25-26.)  The court is of the opinion

that plaintiff has failed to state claim for retaliation under the ADA or the ADEA, and his

retaliation claim is due to be dismissed as a matter of law.

#### 2.    *Legitimate, Nondiscriminatory Reasons*

In the alternative, as discussed in the termination claim above, defendant has set forth

legitimate, nondiscriminatory reasons for plaintiff's termination.  As previously noted, plaintiff

has not set forth sufficient evidence from which a reasonable fact finder could conclude that

defendant's legitimate, nondiscriminatory reasons were pretext for unlawful retaliation.  Thus,

plaintiff's retaliation claim is due to be dismissed as a matter of law.

### F.    State Law Claims

#### 1.    *Invasion of Privacy*

Plaintiff contends that Ketchum and Copeland's investigation, performed at the behest of

defendant, constituted an unlawful invasion of privacy.  The tort of invasion of privacy consists

of four distinct subtorts: (1) wrongful intrusion upon plaintiff's physical solitude or seclusion; (2)

publicity which violates ordinary decencies; (3) putting the plaintiff in a false, but not necessarily

defamatory position in the public eye; and (4) the appropriation of some element of plaintiff's

personality for a commercial use. *Phillips v. Smalley Maint. Serv.*, 435 So. 2d 705, 708 (Ala. 1983). The fourth subtort is clearly inapplicable in this case.

The second and third subtorts contain the elements of publicity and putting the plaintiff in the public eye. The Alabama Supreme Court has recently stated that:

> Publicity . . . means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. The difference is not one of the means of communication, which may be oral, written or by any other means. It is one of a communication that reaches or is sure to reach, the public.
>
> Thus it is not an invasion of the right of privacy . . . to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons.

*Johnston v. Fuller*, 706 So.2d 700, 703 (Ala. 1997) (citing and quoting Restatement (Second) of Torts § 652D cmt. a (1977)) (internal quotations omitted) (ellipses in original).

There has been no such publicity in this case, thus subtorts two and three are inapplicable. *See Pouncy v. Vulcan Materials Co.*, 920 F. Supp. 1566, 1584 n. 9 ("Neither does [defendant's] alleged disclosure of [plaintiff's] private affairs to other employees qualify as 'publication'").

The remaining subtort in an invasion of privacy claim is wrongful intrusion upon the plaintiff's physical solitude or seclusion. In *Phillips*, the Alabama Supreme Court adopted the Restatement (Second) of Torts definition of the wrongful intrusion branch of the invasion of privacy tort. *Phillips*, 435 So. 2d at 708-09. In *Johnston*, the Court specifically set out the definition:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is

26

> subject to liability to the other for invasion of his privacy, if the
> intrusion would be highly offensive to a reasonable person.

*Johnston*, 706 So. 2d at 702 (citing Restatement (Second) of Torts § 652B (1977)).

In *Johnston*, the Court further noted that "[t]he defendant is subject to liability under the

rule stated in this Section only when he has intruded into a private place, or has otherwise

invaded a private seclusion that the plaintiff has thrown about his person or affairs." *Id.* (citing

and quoting § 652B cmt. c).

The Court further stated that:

> The wrongful intrusion may be by physical intrusion into a place
> where the plaintiff has secluded himself, by discovering the
> plaintiff's private affairs through wiretapping or eavesdropping, or
> by some investigation into the plaintiff's private concerns, such as
> opening private mail or examining a private bank account . . . .
> Further, if the means of gathering the information are excessively
> objectionable and improper, a wrongful intrusion may occur.

*Id.* (internal citations omitted).

Plaintiff in this case has failed to allege that defendant entered his home, searched

through his private papers, wiretapped his telephone, or eavesdropped on his conversations.

Plaintiff did not allege that the defendant wrongfully obtained private records concerning his

affairs. Plaintiff failed to present any evidence that defendant's conduct in gathering any

information was abrupt, offensive, and objectionable. *See id.* (dismissing wrongful intrusion

claim because of plaintiff's failure to show such actions). Copeland merely observed actions of

the plaintiff in the workplace that were discernible to any employee.

Consequently, the court finds that plaintiff has failed to set forth sufficient evidence on

which a reasonable jury could conclude that defendant invaded plaintiff's privacy. Thus,

27

plaintiff's invasion of privacy claim is due to be dismissed as a matter of law and summary judgment is due to be granted.

### 2.     *Defamation*

Plaintiff claims that the investigation and report also defamed him.  To prevail in a defamation action, the plaintiff must show:

> 1) a false and defamatory statement concerning the plaintiff;  2) an unprivileged communication of that statement to a third party;  3) fault amounting to at least negligence on the part of the defendant; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement.

*McCaig v. Talladega Pub. Co.*, 544 So. 2d 875, 877  (Ala. 1989) (citation omitted).

The court finds this claim fails due to the conditional privilege afforded reports to managers and employees whose duties include the handling of such reports.  *Cantrell v. North River Homes, Inc.*, 628 So. 2d 551, 553 (Ala. 1993); *K-Mart Corp., Inc. v. Pendergrass*, 494 So. 2d 600, 604 (Ala. 1986).  Because the investigative reports are conditionally privileged, their distribution to appropriate managers and employees is not "publication" for purposes of a defamation action.  *Cantrell*, 628 So.2d at 553.  Therefore, the court if the opinion that plaintiff's defamation claim fails as a matter of law and summary judgment is due to be granted.

### 3.     *Intentional Infliction of Emotional Distress*

Plaintiff also contends that defendant's demotion, investigation and subsequent termination of him constituted an intentional infliction of emotional stress.  The Alabama Supreme Court has defined the tort of intentional infliction of emotional distress as follows:

> [O]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to

28

> liability for such emotional distress and for bodily harm resulting
> from the distress. The emotional distress must be so severe that no
> reasonable person could be expected to endure it.

*Am. Road Serv. Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1981).

In other words, the plaintiff must show (1) that the defendants' conduct was intentional or

reckless;  (2) that it was extreme and outrageous; and (3) that it caused emotional distress so

severe that no reasonable person could be expected to endure it. *Thomas v. BSE Industrial*

*Contractors, Inc.*, 624 So.2d 1041, 1043 (Ala. 1993) (citing *Inmon*, 394 So. 2d at 365). The

*Inmon* test is applied strictly, allowing an outrage claim to go to the jury only in egregious cases.

*Ex parte Crawford & Co.*, 693 So. 2d 458, 459 (Ala. 1997).

In *Inmon*, the Alabama Supreme Court clarified the second element by stating:

> Any recovery must be reasonable and justified under the
> circumstances, liability ensuing only when the conduct is extreme .
> . . . By extreme we refer to conduct so outrageous in character and
> so extreme in degree as to go beyond all possible bounds of
> decency, and to be regarded as atrocious and utterly intolerable in a
> civilized society.

394 So.2d at 365 (citation omitted).

The court finds that the challenged actions fall far short of "conduct so outrageous in

character and so extreme in degree as to go beyond all possible bounds of decency, and to be

regarded as atrocious and utterly intolerable in a civilized society." *Inmon,* 394 So.2d at 365; *see*

*also Ex parte Crawford*, 693 So. 2d at 460-61 (collecting cases setting the threshold for such

extreme behavior).  Defendant's actions were reasonable and civilized, taken only after

investigations, reports, and recommendations by third parties, i.e. the independent consultant

Coopers & Lybrand and the investigative service run by Ketchum.  Consequently, the court finds

29

that plaintiff's claim of intentional infliction of emotional distress fails as a matter of law and summary judgment is due to be granted.

### III.  CONCLUSION

The court concludes that there is no genuine issue as to any material fact, and defendant is entitled to a judgment as a matter of law.  Plaintiff has failed to meet his burden to "designate specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324.  Consequently, the court holds that defendant's Motion for Summary Judgment is due to be granted on all counts.  An order granting defendant's Motion for Summary Judgment will be entered contemporaneously with this Opinion.

**DONE** this _6th_ day of September, 2000.

**SHARON LOVELACE BLACKBURN**
United States District Judge

30